**Gerald LEVINE, Plaintiff,**

v.

**METAL RECOVERY TECHNOLOGIES, INC., formerly known as Malvy Technology, Inc., Jack Alexander, Michael Lucas, Michael Rabhi, Gary Salter, SGA Goldstar Research, Inc., Barron Chase Securities, Inc., and Lawrence Turel, Defendants.**

**No. Civ.A. 96–525–JJF.**

United States District Court, D. Delaware.

June 30, 1998.

Norman Monhait, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, of counsel David B. Zlotnick, of Law Offices of David B. Zlotnick, Tucson, Arizona, Donald B. Lewis, of Law Offices of Donald B. Lewis, Bala Cynwyd, Pennsylvania, for plaintiff.

James L. Holzman, and Bruce E. Jameson, of Prickett, Jones, Elliott Kristol & Schnee, Wilmington, Delaware, for Barron Chase Securities, Inc.

Daniel A. Dreisbach, Richards, Layton & Finger, Wilmington, DE, for Metal Recovery Technologies, Inc. and Michael Lucas.

Gary Salter, Boca Raton, FL, pro se.

David J. Margules, Joanne P. Pinckney, Wolf, Block, Schorr & Solis–Cohen, Wilmington, DE, for Larry Turel.

Jack Alexander, Fort Smith, AR, pro se.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is Defendant Barron Chase Securities, Inc.'s Motion To Dismiss (D.I. 81) pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b). The Amended Complaint alleges that Defendants engaged in a scheme and conspiracy to defraud that involved three basic components:

(1) certain Defendants issued statements regarding Malvy Technology, Inc.'s ("Malvy")[1] stage of development, principal product, and prospects which misrepresented and omitted material facts and had no factual basis;

(2) Defendant Salter in conspiracy with other Defendants bribed securities brokers and traders, including four identified persons at Barron Chase, to induce them to sell Malvy stock aggressively to unsuspecting members of the investing public, which thereby, inflated the market price for Malvy stock; and

(3) Defendants laundered large amounts of unregistered stock into the United States market, in large part through Salter's accounts, thereby reaping substantial personal profits. (D.I. 65). Specific to Barron Chase,[2] the Amended Complaint alleges that it actively and directly participated in the latter two aspects of this fraud. The Amended Complaint alleges that Barron Chase had knowledge of its employees' acceptance of illegal payments and participation in an illegal scheme to defraud. (D.I. 84 at 2–3).

### A. Statute of Limitations

In its Motion to Dismiss, Barron Chase contends that Plaintiff's Section 10(b) claims against it are time-barred, arguing that the claims were filed more than one year after Plaintiff was on notice of the relevant facts. A claim under Section 10(b) of the Securities Exchange Act must be commenced within one year after discovery or notice of the facts constituting the violation and within three years after such violation. *Westinghouse Electric Corp. v. Franklin,* 993 F.2d 349, 352 (3d Cir.1993). Specifically, Barron Chase contends that Plaintiff was first put on notice of the alleged wrongdoing on or about May 24, 1995 when the company filed its annual report on Form 10–K. (D.I. 82 at 8). Barron Chase asserts that Plaintiff received further notice when on June 30, 1995, Malvy announced that it had changed its business emphasis and curtailed its Malvy operations. As a result of this announcement, Malvy's stock declined and its subsidiaries were soon placed in receivership. (D.I. 82 at 8). Plaintiff commenced this action on October 31, 1996, more than one year after the filing of the Form 10–K and the decline in Malvy's stock, subsequent to the June 30 announcement. Barron Chase argues that these events should have placed Plaintiff on notice of Barron Chase's participation in the alleged fraud.

At this juncture of the litigation, the Court concludes that Barron Chase has not conclu-

---

1. Defendant Metal Recovery Technologies, Inc. was formerly known as Malvy Technology, Inc.

2. Barron Chase is a Florida brokerage firm that made a market in Malvy stock. Defendant Lawrence Turel was employed by Barron Chase, as were the three brokers who pled guilty to bribery. (D.I. 65, para. 17 & 18).

sively demonstrated that Plaintiff had reason to suspect Barron Chase's participation in the alleged Malvy fraud until September 5, 1996, less than two months prior to the filing of the Complaint in this action. In strong contradiction to Barron Chase's contentions, Plaintiff asserts that there was no indication that Barron Chase had participated in the fraud until September 5, 1996 when articles in *The Sun–Sentinel* and *The New York Times* reported that a stock promoter, Gary Salter, had bribed brokers to solicit their clients to purchase various stocks, including Malvy, and that three brokers at Barron Chase had pled guilty to securities fraud for accepting bribes. (D.I. 84 at 6–7).

### B. *Respondeat Superior and Conspiracy*

■ Barron Chase also argues that neither respondeat superior or conspiracy are viable theories under Section 10(b) since the United States Supreme Court decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In *Central Bank,* the Supreme Court determined that Congress did not intend to create aider and abetter liability. 511 U.S. at 184, 114 S.Ct. 1439. Notably, in a dissenting opinion, Justice Stevens opined that imposition of secondary liability under respondeat superior and other common law agency principles "appear unlikely to survive the Court's decision." *Id.* at 200–201 n. 12, 114 S.Ct. 1439.

In *AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421 (3d Cir.1994), the Court of Appeals for the Third Circuit considered the impact of *Central Bank* on .claims of respondeat superior under the Lanham Act. The Third Circuit in *AT & T* held that the *Central Bank* decision did not affect the availability of respondeat superior liability. *Id.* at 1430–31. The Third Circuit determined that imposition of liability under traditional theories such as respondeat superior does not expand the scope of prohibited con-. duct. *Id.* While other circuit courts have rendered decisions inconsistent with *AT & T,* the Court is compelled to follow *AT & T* and conclude that respondeat superior liability is still available under securities laws in this circuit.

The Court further concludes that conspiracy liability survives the *Central Bank* decision. The Court finds *In re Towers Financial Corp. Noteholders Litigation,* 936 F.Supp. 126 (S.D.N.Y.1996) instructive on this issue. The *In re Towers* court noted that the aiding and abetting allegations in *Central Bank* involved only recklessness, not intentional wrongdoing which typically underlies claims of conspiracy. *Id.* at 130. For the reasons provided in the *In re Towers* decision, the Court concludes that Plaintiff may maintain a conspiracy claim in this action.

### C. *FRCP 9(b)*

Barron Chase also contends that Plaintiff's Amended Complaint fails to allege fraud as required by FRCP 9(b), which provides that in pleading claims of fraud, "the circumstances constituting fraud ... shall be stated with particularity." Specifically, Barron Chase argues that Plaintiff failed to allege with particularity the specific acts that are attributable to the fraudulent scheme or that Barron Chase had any knowledge as to the alleged false statements.

■ Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge of its falsity by the person who made it; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 284 (3d Cir.1992) (citation omitted). The Third Circuit has emphasized that "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs," particularly when the factual information is within the defendant's knowledge or control. *Id.* at 285 (quotation omitted). All that is required is that the complaint places the defendants on notice of the precise misconduct with which they are charged. *Gurfein v. Sovereign Group,* 826 F.Supp. 890, 906 (E.D.Pa.1993). As this Court has noted previously, the requirement of particularity does not require " 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated ... the alleged

fraud and reasonably believes that a wrong has occurred.'" *In re ML–Lee Acquisition Fund II, L.P. and ML–Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation,* 848 F.Supp. 527, 555 (D.Del. 1994) (quotations omitted).

■ In the instant case, the Court concludes that the Amended Complaint answers each question that might be reasonably asked of a plaintiff asserting a fraudulent violation of the securities laws. The Amended Complaint describes the fraudulent acts—bribery and stock laundering—that Barron Chase allegedly committed. (D.I. 65, para. 41–44). Moreover, the Amended Complaint identifies with particularity the participants in the fraud (identifying the role of the Barron Chase brokers), the nature of the fraud, where and when the fraud occurred and the means that Defendants used to perpetrate it. Plaintiff also alleges facts that put Barron Chase on notice of what it must defend, including the sworn testimony of Salter's former assistant that the bribes were given, the massive amounts of stock sold by Salter through Barron Chase, and the guilty pleas of three identified Barron Chase brokers. By alleging that Barron Chase representatives accepted bribes in connection with sales of Malvy stock and that they knowingly laundered unregistered stock, the Court concludes that Plaintiff has alleged with particularity its fraud claims against Barron Chase.

■ The Court further concludes that the Amended Complaint alleges Barron Chase's scienter with sufficient particularity to satisfy the requirements of Rule 9(b). Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Court finds that the Amended Complaint fulfills this requirement by alleging that Barron Chase representatives accepted bribes to promote and sell Malvy stock. In support of its bribery claims, Plaintiff asserts the testimony of Salter's assistant and the guilty pleas of three former Barron Chase brokers. (D.I.65, para. 59–60). Further, in support of his claim that Barron Chase participated in a laundering scheme of unregistered stock, Plaintiff alleges (1) that Malvy had issued 16,250,000 unregistered shares under Regulation "S" to foreign investors in connection with the acquisition of Malvy France; (2) that the 890,-000 Malvy shares that Barron Chase sold for Salter were transferred to Salter's accounts from various Isle of Man companies; and (3) that Barron Chase was also broker for at least two of the Isle of Man companies, Collett Limited and Clearwater Limited. (D.I. 65, para. 4, 39, 42–43). Thus, the Court concludes that Plaintiff has pled facts sufficient to maintain claims that Barron Chase knew or recklessly disregarded information that it was directly engaged in laundering unregistered Malvy stock.

### D. *Valid Section 20(a) Claim*

Barron Chase also contends that Plaintiff's Section 20(a) claim should be dismissed. In support of its application, Barron Chase raises two arguments. First, Barron Chase maintains that Plaintiff's Section 20(a) claim is barred by the applicable statute of limitations which is identical to the statute of limitations for Section 10(b) claims. Second, Barron Chase contends a Section 20(a) claim depends on the existence of an underlying securities violation. Therefore, if Defendant Turel's motion to dismiss (D.I. 71) is granted, Barron Chase argues that no such underlying securities claim exists to support Plaintiff's Section 20(a) claim.

Barron Chase's statute of limitations argument will be denied for the reasons expressed in Section A of this Memorandum Opinion; and since the Court denied Defendant Turel's motion to dismiss by a Memorandum Opinion dated June 26, 1998. Barron Chase's motion to dismiss the Section 20(a) claim will be denied in its entirety.

For the reasons discussed, the Court will deny Defendant Barron Chase Securities, Inc.'s Motion To Dismiss (D.I. 81). An appropriate Order will be entered.